UNITED STATES of America, Plaintiff,

v.

**Anthony James SEBASTIAN a/k/a Tony Sebastian and Patrick Gibbons, Defendants.**

No. CR–1973–237.

United States District Court,
W. D. New York.

March 14, 1977.

Richard J. Arcara, U. S. Atty., Buffalo, N. Y. (Roger P. Williams, Buffalo, N. Y., of counsel), for the Government.

Robert C. Macek, Buffalo, N. Y., for defendant Sebastian.

Doyle & Denman, Buffalo, N. Y. (George P. Doyle and Robert S. Sichel, Buffalo, N. Y., of counsel), for defendant Gibbons.

CURTIN, Chief Judge.

The defendants in this case were indicted in June of 1973 in a three-count indictment charging them with two substantive counts of uttering and publishing forged United States Savings Bonds and one count of conspiring to utter and publish forged United States Savings Bonds in violation of 18 U.S.C. §§ 472[1] and 371. After substantial delays caused by pretrial motions and appeals, the case came on for trial in May of 1976. After the jury was impaneled and sworn, the Government, realizing that it had proceeded under the wrong statute and that the proof it was about to present did not conform to the charges alleged, requested the court to dismiss the indictment. What the Government intended to prove was that the defendants had passed genuine United States Savings Bonds with forged payee signatures.

The court dismissed the indictment on the Government's request. The defendants were then reindicted in June of 1976 and charged with violations of 18 U.S.C. §§ 495[2] and 371. Under this new thirty-

---

1. *§ 472. Uttering counterfeit obligations or securities*

Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

2. *§ 495. Contracts, deeds, and powers of attorney*

Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money; or

Whoever utters or publishes as true any such false, forged, altered, or counterfeited writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited; or

seven count indictment, the Government alleges that each defendant "did aid, abet, counsel, command and induce [a third individual] to forge the endorsement of Bernice Goulder on [thirty-six separate] United States Saving[s] Bonds." The final count in the 1976 indictment is a conspiracy count which alleges the same overt acts alleged in the conspiracy count of the first indictment.

The defendants have moved to dismiss the 1976 indictment on double jeopardy and speedy trial grounds.

## I. DOUBLE JEOPARDY

■ The double jeopardy clause of the fifth amendment states that " . . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." The inclusion of the double jeopardy clause in the Bill of Rights was an acknowledgment by the founding fathers of this country of the severe and onerous burdens put on an individual by a criminal prosecution. The difficulties imposed on a criminal defendant were thought to be so great that it was only fair to allow the Government one chance to convict a person on any one crime. As the Supreme Court has expressed it,

the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Green v. United States, 355 U.S. 184, 187–88 [78 S.Ct. 221, 223, 2 L.Ed.2d 199] (1957).

■ The first inquiry for the court is whether jeopardy has attached. In the usual jury trial, jeopardy attaches upon the impaneling and swearing of the jury. Serfass v. United States, 420 U.S. 377, 388 [95 S.Ct. 1055, 43 L.Ed.2d 265] (1975); Downum v. United States, 372 U.S. 734 [83 S.Ct. 1033, 10 L.Ed.2d 100] (1963). Having satisfied that requirement, in order for double jeopardy to apply, the general rule is that the two offenses "must be the same in law and in fact." United States v. Pacelli, 470 F.2d 67, 72 (2d Cir. 1972), cert. denied, 410 U.S. 983 [93 S.Ct. 1501, 36 L.Ed.2d 178] (1973).

■ It is agreed by both the parties, and is evident from the two indictments, that the underlying facts of the charges alleged in each of the indictments are the same. The Government claims, however, that the offense charged in the 1973 indictment and the offense charged in the 1976 indictment are not identical and thus do not give rise to the double jeopardy plea.

A comparison of the two statutes, which are reproduced in the margin, supra, appears to substantiate this analysis. Section 472 pertains specifically only to "falsely made, forged, counterfeited, or altered obligation or other security of the United States," while § 495, on the other hand, under distinct and separate paragraphs, prohibits the counterfeiting, uttering or presenting of "any deed, power of attorney, order, certificate, receipt, contract, or other writing" with intent to receive money from the United States Government. As the Government points out in its brief, forging a signature on a genuine United States Bond is a violation of § 495, whereas the passing of a counterfeit United States Bond or other security is a violation of § 472. See Roberts v. United States, 331 F.2d 502 (9th Cir. 1964).

The defendants argue, however, that the "same in law and fact" test should not be determinative in this case, because, unlike the cases on which the Government relies, the evidence here is not sufficient to support a case under both § 472 and § 495. For example, United States v. Pacelli, supra, cited by the Government, involved a

Whoever transmits to, or presents at any office or officer of the United States, any such writing in support of, or in relation to, any account or claim, with intent to defraud

the United States, knowing the same to be false, altered, forged, or counterfeited—

Shall be fined not more than $1,000 or imprisoned not more than ten years, or both.

prosecution for drug possession and distribution. The defendant was convicted of conspiracy to possess and distribute, the *same* offense to which he had earlier pled guilty. However, when the defendant raised the plea as a bar to the conviction, the court expressly pointed out that the alleged conspiracies involved two distinct time periods and different overt acts. The only common conspirator was this particular defendant. Other cases cited by the Government are similar in showing evidence of more than one offense. *See United States v. McCall*, 489 F.2d 359 (2d Cir. 1973), *cert. denied*, 419 U.S. 849 [95 S.Ct. 88, 42 L.Ed.2d 79] (1974); *United States v. Nathan*, 476 F.2d 456 (2d Cir. 1973), *cert. denied*, 414 U.S. 823 [94 S.Ct. 171, 38 L.Ed.2d 56] (1973).

The defendants urge the court to apply the "same transaction" test championed by Justice Brennan in *Abbate v. United States*, 359 U.S. 187 [79 S.Ct. 666, 3 L.Ed.2d 729] (1959), in which he stated:

> . . . I think it clear that successive federal prosecutions of the same person based on the same acts are prohibited by the Fifth Amendment even though brought under federal statutes requiring different evidence and protecting different federal interests. . . .
>
> \* \* \* \* \* \*
>
> . . . I think not mere violence to, but virtual extinction of, the [double jeopardy] guarantee results if the Federal Government may try people over and over again for the same criminal conduct just because each trial is based on a different federal statute protecting a separate federal interest. 359 U.S., at 197, 201 [79 S.Ct., at 672, 674].

It should be noted, however, that these comments are Justice Brennan's alone and have not been joined in by a majority of the Court. *See Ashe v. Swenson*, 397 U.S. 436, 448 [90 S.Ct. 1189, 25 L.Ed.2d 469] (1970) (J. Brennan, concurring). *See also United States v. Cioffi*, 487 F.2d 492, 497, n.5 (2d Cir. 1973). Although Justice Brennan's reading of the double jeopardy clause is

persuasive, it has not yet been accepted as the law.

Defendants contend, however, that *United States v. Sabella*, 272 F.2d 206 (2d Cir. 1959), did accept the "same transaction" test for this circuit. That case was later narrowly interpreted by the Second Circuit in *United States v. Cioffi, supra*, 487 F.2d at 497–98, and, in light of subsequent Supreme Court decisions, the defendants' interpretation of it appears strained.

*Illinois v. Somerville*, 410 U.S. 458 [93 S.Ct. 1066, 35 L.Ed.2d 425] (1973), a case that none of the parties have cited, supports our conclusion that double jeopardy does not apply in this case. In *Somerville*, a nearly identical situation to that before this court had occurred. The defendant was indicted and brought to trial for theft. After the jury was impaneled, the state prosecutor realized that the indictment failed to allege that the defendant intended to deprive the owner of the stolen goods. This omission of a necessary element of the crime charged made the indictment fatally defective. The State moved for a mistrial and the trial court granted the motion.

As the Court explained in *Somerville*,

> . . . in cases in which a mistrial has been declared prior to verdict, the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial.

*United States v. Somerville, supra*, 410 U.S., at 467 [93 S.Ct., at 1072].

Since the defect in the indictment was jurisdictional, and would be grounds for reversal under Illinois law, the Court held that the declaration of a mistrial and retrial under a new indictment were proper under the "manifest necessity" and "ends of public justice" test of *United States v. Perez*, 22 U.S. (9 Wheat.) 579 [6 L.Ed. 165] (1824).

In the present case, the Government acknowledged that its original indictment was invalid and requested that it be dismissed. Defense counsel acknowledged that had the trial proceeded, a motion to dismiss at the conclusion of the Government's case would have to be granted. (Transcript, May 7,

1976, at 10). In granting the Government's motion to dismiss the indictment, this court stated: " . . . this is an unfortunate turn of events but it is essential and therefore I have no other alternative." (Transcript, May 7, 1976, at 11).

The *Somerville* Court distinguished three prior Supreme Court double jeopardy decisions, *United States v. Jorn,* 400 U.S. 470 [91 S.Ct. 547, 27 L.Ed.2d 543] (1971); *Downum v. United States,* 372 U.S. 734 [83 S.Ct. 1033, 10 L.Ed.2d 100] (1963); and *United States v. Ball,* 163 U.S. 662 [16 S.Ct. 1192, 41 L.Ed. 300] (1896).

In *Ball,* the defendant was acquitted by a jury of a charge of murder. Two codefendants, who were convicted, appealed and their convictions were reversed because the indictment was defective. The State reindicted all three of the defendants. As to the defendant who had been acquitted, the Supreme Court ruled that an acquittal, even under a defective indictment, is a bar to retrial. In the present case, unlike *Ball,* the trial did not proceed to verdict.

In *Downum,* after the jury was impaneled and sworn, the Government asked that the jury be discharged because a key prosecution witness on two of the seven counts was not present. The defendant urged that the two counts for which this witness was needed be dismissed and the trial continue as to the remaining charges. The trial court dismissed the jury. The Supreme Court, noting that the Government had moved to trial knowing that its witness was missing, and that the defendant had been deprived of "the valued right . . . to have his trial completed by the particular tribunal summoned to sit in judgment on him", 372 U.S., at 736 [83 S.Ct., at 1034] ruled that retrial was barred by the double jeopardy clause.

The *Jorn* case involved an unusual situation where a trial judge, after the trial had commenced and without consultation with either Government or defense counsel, dis-

missed the jury because he believed that the prosecution witnesses needed legal counsel before testifying. The Supreme Court ruled that this action by the trial judge was an abuse of discretion and that double jeopardy barred a retrial.

Like the situation in *Somerville,* this case is distinguishable from *Ball, Downum,* and *Jorn.* If this case had gone to a verdict, a retrial because of a defective indictment would have been barred by *United States v. Ball, supra.* Having considered all the circumstances, this court believed it proper to dismiss the original indictment. Consequently, *Illinois v. Somerville, supra,* controls and double jeopardy does not bar the prosecution under the reindictment.

## II. SPEEDY TRIAL

Defendants' second contention is that they have been denied their right to a speedy trial under the sixth amendment, and under the rules of the Second Circuit and this district. There is no question but that these cases have been long delayed, but whether or not defendants' speedy trial right has been infringed requires some analysis.

The Second Circuit Rules Regarding Prompt Disposition of Criminal Cases, and the Western District Plan For Achieving Prompt Disposition of Criminal Cases,[3] which contain substantially identical provisions, provide that the Government "must be ready for trial within six months from the date of arrest . . . ." (Rule 4). However, there are several categories of excludable time that may toll the six-month period. (Rule 5).

The defendants' most vigorous argument is that the Government's original notice of readiness for trial, filed on November 29, 1973, was a nullity because, when the trial eventually took place in May of 1976, the Government was forced to request a mistrial and a dismissal of the indictment due to its inadvertent mistake in proceeding in

---

**3.** As stated, the Western District Rules are substantially similar to the Second Circuit Rules. The Western District Rules were modified slightly when the Western District Interim Plan

Pursuant to the Provisions of the Speedy Trial Act of 1974 became effective September 29, 1975.

the indictment under the wrong statute. According to the defendants, the Government was, therefore, never actually "ready for trial."[4]

The Government argues that since the indictment lays new charges, the time for the Government to be prepared should begin with the new indictment. The defendants, to counter this position, mount the same argument they raised on the double jeopardy claim, namely, that this is the same prosecution as under the first indictment and since the Government's notice was faulty, this indictment should be dismissed. Neither position is totally correct.

The Second Circuit and Western District Rules do not deal specifically with reindictments. The parties have not cited the court to any applicable case law, and, after a thorough search, the court has been unable to discover any similar cases.

■ Although the Second Circuit and this District's Rules do not specifically deal with reindictments, the Speedy Trial Act of 1974, 18 U.S.C. § 3161(h), provides:

(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

\* \* \* \* \* \*

(6) If the information or indictment is dismissed upon motion of the attorney for the Government *and thereafter a charge is filed against the defendant for the same offense,* or any offense required to be joined with that offense, *any period of delay from the date the charge was dis-* *missed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge.*

(Emphasis added).

This provision implies that a reindictment for the same offense is permissible. It also indicates that the time limitation commences running with the first indictment or arrest, but the Government is merely given the benefit of tolling the period of time during which no indictment is outstanding. *See United States v. Flores,* 501 F.2d 1356, 1360 n. 4 (2d Cir. 1974). This rule contrasts with the situation where the indictment is dismissed at the defendant's request, in which case the time limitations commence anew with the reindictment.[5]

■ The time limit of 18 U.S.C. § 3161(b), which describes the time within which an indictment must be filed, does not apply to a defendant who was indicted prior to July 1, 1976. The time limits imposed by § 3161(c), the subsection dealing with the time within which the Government must arraign and try a defendant, begin to run on July 1, 1976 as to all indictments filed prior to that date. Under the Speedy Trial Act, then, the Government is on solid ground in this case.

■ And, although the Second Circuit and Western District Rules do not specifically deal with reindictments, we believe that reindictments should be handled under those rules in a manner similar to that prescribed by the Speedy Trial Act. If we analogize the Speedy Trial Act, the Second Circuit Rules and the Western District Rules, then, the Government would have to be ready for trial within six months of

---

4. This is not a case where the Government knew it was not prepared for trial and merely filed its notice of readiness to technically comply with the statute. *See United States v. Blauner,* 337 F.Supp. 1383, 1388–1389 (S.D.N.Y.1971).

5. *See* § 3161(d), which states:

(d) If any indictment or information is dismissed upon motion of the defendant, or any charge contained in a complaint filed against an individual is dismissed or otherwise dropped, and thereafter a complaint is filed against such defendant or individual charging him with the same offense or an offense based on the same conduct or arising from the same criminal episode, or an information or indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be.

arrest, not counting excludable time, even in the case of a reindictment following a Government requested dismissal.

Examination of the docket sheets, the motion papers of the defendants, and the Government's memorandum in opposition, shows the following.

With respect to defendant Sebastian, the Government must be charged with the initial thirty-five days from his arrest on May 24, 1973 to his arraignment on June 28, 1973. With respect to defendant Gibbons, the moving papers do not state the date of his arrest, but it appears that he was apprehended in December of 1972. The exact date is unimportant, for the period of time between Gibbons' arrest and Sebastian's arrest is excludable under Rule 5(e) of the Second Circuit and Western District Rules. Therefore, as to Gibbons, the Government is also charged with the thirty-five days from May 24, 1973 to June 28, 1973, the date of his arraignment.

At the time of the arraignment, the court allowed the defendants until July 26 to file motions. The motions filed on July 26 were set down for a hearing, before which briefs were to be filed, on December 19, 1973. At that hearing, the Government refused to turn over certain written statements of its witnesses and the court, citing the Government's refusal, suppressed certain evidence on December 21, 1973. The court ordered the Government to appeal, if it wished, within thirty days and the Government did so, on January 14, 1974.

The appeal by the Government was successful and the Second Circuit reversed this court's decision on June 7, 1974. *United States v. Sebastian*, 497 F.2d 1267 (2d Cir. 1974). The defendants' request for a rehearing was denied on August 15, 1974, and its request for an extension of time within which to petition for certiorari was denied on September 16, 1974.

The Government put this case back on this court's calendar on October 21, 1974, some thirty-five days later. At the October 21 calendar call, the defendants did not make an appearance, and the court adjourned the matter until December 9, 1974.

At that time, the Government announced its readiness for trial and the court directed the clerk to have the file returned from the circuit court. No appearance was made by the defendants on December 9, and the court set a new status report for January 13, 1975. The defendants again failed to appear. The Government noted that the suppression hearing was still to be completed and the court stated that it would set a new date.

On March 31, 1975, the court set a resumption of the hearing for April 22, 1975. The defendants requested an adjournment on that date and the court set June 18, 1975 as the new date. On June 18, a new counsel was substituted for defendant Sebastian and the hearing was held. Not until September 16, 1975 did Sebastian's new counsel notify the court that no further evidence would be submitted on behalf of his client. The court requested the parties to file proposed findings of fact and memoranda of law by October 28, 1975, and the case was considered submitted as of that date. On December 4, 1975, the court rendered a decision.

On December 15, 1975, the case again appeared on the court's calendar to set a trial date, but neither defendant appeared. The court placed the case on the trial calendar and it was called for trial on May 4, 1976.

On May 7, 1976, the Government moved to dismiss the indictment. The new indictment was filed June 24, 1976 and the Government filed a notice of readiness on July 15, 1976, some twenty-two days later.

The defendants argue that the entire period from the date of the court's first suppression ruling on December 21, 1973 until the resumption of the hearing on January 18, 1975 must be charged to the Government. Pointing to the Government's decision to hand over the contested documents to the defendants at the resumption of the suppression hearing, the defendants argue that the Government's appeal was needless and a waste of the defendants' time. If there were any evidence that the Government appealed in bad faith, the defendants

would be correct and the Government would be charged for this time. But merely because the prosecutor later changed his mind does not cause this court to charge the Government with bad faith. As has been noted,

> [t]he right of the Government to appeal decisions in the defendant's favor before jeopardy attaches is designed to protect the interest of society in lawfully prosecuting criminal offenders, . . . .

*United States v. Bishton* [150 U.S.App. D.C. 51] 463 F.2d 887, 890 (1972). In addition, Rule 5(a) specifically provides that delay caused by interlocutory appeals is excludable.

Charging the Government with the time it took to appeal, December 21, 1973 to January 14, 1974, some twenty-four days, and the time after the appeal until the Government brought the action back on the calendar, from September 16, 1974 to October 21, 1974, a period of some thirty-five days, brings the total time charged to the Government to ninety-four days.

From October 21, 1974 until January 18, 1975, the delays cannot be charged to the Government and, in fact, substantial delays during this period were due to the defendants. After the court made its suppression ruling on December 4, 1975, the case was on the trial calendar and no delay can be attributable to the Government.

■ Following the dismissal of the indictment, the Government reindicted the defendants June 24, 1976. A notice of readiness was filed July 15, 1976. This period of time, amounting to twenty-two days, added to the delay charged to the Government under the first indictment, amounts to a cumulative delay of one hundred sixteen days. Since this is well under the six-month limit, the Government has complied with the Rules.

■ Compliance with the Speedy Trial Act or the Second Circuit and Western District Rules does not necessarily insulate the Government from attack under the sixth amendment speedy trial guarantee. *See* 18 U.S.C. § 3173.

■ The Supreme Court, in *Barker v. Wingo,* 407 U.S. 514, 530 [92 S.Ct. 2182, 33 L.Ed.2d 101] (1972), established a four-part test for sixth amendment speedy trial assertions. The four factors, which must be considered in toto, are the length of the delay, the reasons for the delay, whether or not the defendants claimed their sixth amendment right, and whether or not defendants have suffered any prejudice.

Sebastian was arrested in May of 1973 and Gibbons apparently December 8, 1972. The three-year delay in bringing defendants to trial in May of 1976 is sufficient to cause this court to closely examine the reasons for the delay. *See United States v. Palmer,* 537 F.2d 1287, 1288 (5th Cir. 1976). A great bulk of the delay occurred, as explained *supra,* because of the Government's appeal of this court's suppression ruling. The defendants have not shown that this appeal was manipulative or in any way carried out in bad faith.

Prior to the present motion, there is no indication in the record that the defendants requested a speed-up in their trial. The defendants' only claim of prejudice is that the delay has dimmed witnesses' memories. Finally, the defendants argue that the primary cause of delay was the Government's mistake in proceeding under a defective indictment.

■ On balance, this court does not believe the defendants' sixth amendment rights have been violated. Contrary to the defendants' assertion, the court does not believe that much of the delay was caused by the Government's error that required the dismissal of the first indictment. The reindictment was accomplished within twenty-two days of the court's dismissal of the first indictment. The great bulk of the delay was due to the Government's suppression ruling appeal and defendants' numerous requests for adjournment. After considering all the factors, this court does not believe that the defendants' sixth amendment rights have been violated.

So ordered.