**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edward Lee HORTON, a/k/a "Cornbread" Horton, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Bragster G. HORTON, Defendant-Appellant.**

**Nos. 81–1155, 81–1489 and 81–1178.**

United States Court of Appeals, Seventh Circuit.

April 29, 1982.

Rehearing and Rehearing Denied July 21, 1982.

Alexandra de Saint Phall, Londrigan & Potter, Springfield, Ill., for defendants-appellants.

Larry A. Mackey, Asst. U. S. Atty., Gerald D. Fines, U. S. Atty., Springfield, Ill., for the U. S.

Before SWYGERT, Senior Circuit Judge, and PELL and BAUER, Circuit Judges.

BAUER, Circuit Judge.

Edward "Cornbread" Horton and his brother, Bragster, challenge their conviction of numerous crimes connected with extortionate collection practices. We affirm.

On September 24, 1980 a fifteen count indictment was returned against Cornbread, Bragster, and four others. Cornbread was charged in ten counts of extortionate collection practices in violation of 18 U.S.C. § 894; use of a firearm to commit a felony in violation of 18 U.S.C. § 924; interstate travel in aid of racketeering in violation of 18 U.S.C. § 894; and making extortionate loans in violation of 18 U.S.C. § 894. Bragster was charged in two counts of aiding and abetting the extortionate collection practices.

Both men pleaded not guilty and filed motions to dismiss the indictment, challenging it for lack of specificity. These motions were taken under advisement and trial was set for November 24, 1980. On November 18, 1980, before the trial court had ruled on the pending motions, a six count superseding indictment was returned and the original indictment was dismissed.[1] The superseding indictment charged Cornbread with two counts of extortionate collection practices and two counts of using a firearm to commit extortion. Bragster was again charged with aiding and abetting the extortionate practices.

Pursuant to the Speedy Trial Act, 18 U.S.C. § 3161 et seq., defendants moved for a continuance of the trial date. The court denied the motions and the trial commenced three days after Cornbread and Bragster had been arraigned on the superseding indictment.

The victims, Curtis Hardy and James Conkrite, testified for the government under a grant of immunity. Their uncontradicted testimony showed that both Hardy and Conkrite were heroin addicts who frequently purchased heroin from Cornbread.

---

1. A representative count of the superseding indictment stated:

COUNT 1

On or about the 6th day of July, 1979, in the Central district of Illinois, at 2128 East Monroe Street, Springfield, Illinois

EDWARD LEE HORTON,

having on previous occasions, the exact dates unknown, extended credit to Curtis H. Hardy arising from the sale of narcotics, did knowingly, willfully and unlawfully participate in the use of extortionate means to attempt to collect from Curtis H. Hardy said extension of credit, the amount of which was in dispute, and to punish Curtis H. Hardy for the nonrepayment thereof, in that EDWARD LEE HORTON expressly and implicitly threatened the use of violence and other criminal means in causing harm to the person of Curtis H. Hardy in that EDWARD LEE HORTON shot Curtis H. Hardy in the left leg with a firearm.

All in violation of Title 18, United States Code, Section 894.

During 1979 Hardy made numerous purchases of heroin, often paying Cornbread with checks on which he forged his father's signature. Three of these checks were honored by the bank. Subsequently, the bank discovered the forgery and refused to honor four later checks. Cornbread had additional checks from Hardy which he had never attempted to cash. Hardy promised Cornbread that he would reimburse Cornbread for the amount of the bad checks. In addition, on at least one occasion, Cornbread gave Conkrite $150 worth of heroin on credit.

By July 1979 Hardy and Conkrite owed Cornbread between $700 and $800 for the heroin he had supplied. On July 5, 1979 Hardy and Conkrite went to Cornbread's house with an air conditioner which they hoped Cornbread would accept in partial payment of their debt. Cornbread agreed. During their negotiations Cornbread pulled out a pistol and a machine gun and with the aid of another man forced Hardy and Conkrite into the basement where they were kept under constant watch at gunpoint by Cornbread, Bragster, and two other men. Cornbread berated his two victims for owing him money and hit the men with a pistol and a blackjack. A few hours later Cornbread shot Conkrite in the left knee. As he was going to shoot Hardy, who had both legs together, Bragster told Hardy to move his legs apart so he would not be shot in both knees. Cornbread then shot Hardy in one knee. During the time Hardy and Conkrite were held captive, Bragster urged them to "tell the man [Cornbread] what he wants to know."

The wounded men remained in the basement until Bragster put a tourniquet on Hardy's leg and assisted both men up the stairs. They then drove themselves to the hospital where they were admitted for medical treatment. When Hardy and Conkrite were interviewed by the police, they claimed that the shooting occurred on the street as they were trying to fix their truck.

The jury found Cornbread and Bragster guilty on all counts. Cornbread was sentenced to sixty years imprisonment, receiving the maximum sentence for each count to be served consecutively. Bragster was sentenced to four months imprisonment and four years and eight months probation.

Cornbread and Bragster (collectively Cornbread) filed a joint appeal assigning numerous errors. Initially, Cornbread challenges the sufficiency of both the original and the superseding indictments. Second, he alleges that the trial court's refusal to continue the trial date after the superseding indictment was returned violated the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* Third, he claims that the government instruction defining "knowingly" was erroneous. Fourth, Cornbread contends that the evidence was insufficient to show that he engaged in the collection of credit by extortionate means or that his brother aided and abetted any extortionate activities. Finally, Cornbread assigns two errors concerning his sentence, contending that the trial court improperly imposed two separate sentences for one extortionate act and abused its discretion by imposing the maximum sentence for each count. None of these arguments has merit.

I

Cornbread claims that both the original and superseding indictments lack specificity because they contain little information about the alleged extensions of credit. The original indictment did not specify the amount of the credit extended or when these extensions were made. It identified the victims only by initials. The superseding indictment, premised on the same theories of prosecution as the original indictment, contained the full names of the victims and added the fact that the extensions of credit involved narcotics, but provided no information concerning the amounts or dates of the extensions of credit.

Cornbread argues that the omission of the approximate times, dates, and amounts of the alleged extensions of credit seriously hampered his ability to prepare a defense, precluding him from asserting that there had been no extensions of credit, that any

debt had already been extinguished, or that the assault was not connected with the debt. He argues that a valid indictment must state the essential elements of the offenses charged as well as a statement of facts and circumstances relating to each element. Relying on *United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979), and *United States v. King*, 587 F.2d 956 (9th Cir. 1978), he concludes that the indictment was impermissibly vague and ambiguous.

■ The purpose of an indictment is to provide the accused with a sufficient description of the offenses charged so that the accused will be able to prepare a defense. *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979). Generally, an indictment is sufficient if it contains the essential elements of each offense charged. *United States v. King*, 587 F.2d 956, 963 (9th Cir. 1978). However, mere tracking of the statutory language is insufficient where additional information is necessary to provide the accused with a clear understanding of the specific charges against him. *United States v. Cecil*, 608 F.2d 1294, 1297 (9th Cir. 1979).

■ Our reading of the superseding indictment convinces us that, although perhaps less detailed than desirable, it is nevertheless sufficient. Clearly, the superseding indictment contained sufficient information to notify Cornbread that he was being charged with selling heroin to Hardy and Conkrite on credit and then threatening them with firearms and other acts of violence when they failed to repay him. Thus, not only was Cornbread advised of the essential elements of the offenses with which he was charged, *see United States v. Gambino*, 566 F.2d 414 (2d Cir. 1977), *cert. denied*, 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978), but unlike the indictment found to be insufficient in *United States v. Tomasetta*, 429 F.2d 978 (1st Cir. 1970), the superseding indictment here identified the victims by name and precisely located and described the violent acts of extortion. Since the superseding indictment specifically informed Cornbread that the extensions of credit arose from drug transactions, we

do not believe that the lack of detail concerning the times and amounts of the extensions of credit which subsequently precipitated the violent acts in any way hampered the preparation of Cornbread's defense.

*United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979), and *United States v. King*, 587 F.2d 956 (9th Cir. 1978), relied upon by Cornbread, are inapposite. The indictment in *Cecil*, unlike the indictment against Cornbread, failed to identify any overt acts and specifically alleged only the state in which the offense was committed and the names of some of the co-conspirators. In *King* the indictment omitted essential elements of the crime. In contrast, the indictment here not only alleged the essential elements of each offense charged but provided substantially more information than the indictments in either *Cecil* or *King*. We conclude that the superseding indictment against Cornbread and Bragster was not fatally defective.

II

Cornbread challenges the trial court's denial of a thirty day continuance after the superseding indictment was returned on the grounds that the denial: (1) violated the Speedy Trial Act, 18 U.S.C. § 3161(c)(2) and (d); and (2) was an abuse of the court's discretion. Neither of these arguments withstands analysis.

Both parties agree that the question of whether the time limitation in 18 U.S.C. § 3161 begins to run anew with reindictment turns on which party is responsible for dismissal of the original indictment, but they disagree as to which party was responsible for the dismissal in this case. The statute provides that if the defendant is responsible for the dismissal, subsection (d)(1) is triggered and the defendant is entitled to another thirty day period before trial. On the other hand, subsection (d) does not apply if the government obtains the dismissal. In that case, the time limitation begins to run with the original indictment. *United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980).

Cornbread asserts that while technically the original indictment was dismissed on the government's motion, in actuality the government's actions were in response to his earlier motion to dismiss the indictment. He reasons that the original indictment was dismissed on his own motion, thereby triggering § 3161(d)(1). Cornbread discounts the government's reliance on *United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980), and *United States v. Sebastian*, 428 F.Supp. 967 (W.D.N.Y.), *aff'd on other grounds*, 562 F.2d 211 (2d Cir. 1977), arguing that neither *Dennis* nor *Sebastian* was decided in a situation where, as here, the indictment was dismissed upon the motion of the prosecutor after the defendant had contended that the indictment was invalid.

■■ The mere filing of a defendant's motion to dismiss an indictment does not trigger subsection (d)(1); the right to a new thirty day time period is dependent upon a favorable ruling on that motion. In this case, although Cornbread filed his motion before the government filed a superseding indictment and moved to dismiss the original indictment, the trial judge never decided Cornbread's motion. While we note that the trial judge indicated some preliminary doubts as to whether the original indictment was sufficient, we decline to speculate as to how the motion would have ultimately been resolved. Accordingly, the original indictment was not dismissed on the defendant's motion and, thus, § 3161(d)(1) is not applicable.

■ Subsection 3161(h)(6), on which the government relies, does not specifically address the question of whether a new thirty day time period begins to run after the government has dismissed its own indictment and returned a superseding one. Rather, subsection 3161(h)(6) controls a situation where there is an interval between the time the original indictment is dismissed on the government's motion and the

superseding indictment is returned. In that situation, the time limitation is tolled during the period when no indictment is outstanding. *United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980).[2]

There was no time gap between the two indictments returned in this case. Nevertheless, a fair implication of the statute is that reindictment for the same offense is permissible and that the time period begins to run with the first indictment. *United States v. Sebastian*, 428 F.Supp. 967, 973 (W.D.N.Y.), *aff'd on other grounds*, 562 F.2d 211 (2d Cir. 1977). Therefore, the district court's denial of a new thirty day continuance was not a violation of the Speedy Trial Act.

■ Similarly, there is no merit to Cornbread's contention that denial of a continuance was an abuse of discretion. The record reveals that the trial judge carefully weighed the rights of both sides, giving Cornbread ample opportunity to show how he would be prejudiced if he was required to proceed to trial. Tr. of Hearing on Pre-Trial Motions at 24–30. Cornbread was unable to show any prejudice. Indeed, the record indicates that, at the time of the superseding indictment, Cornbread already knew the names of the victims and had had an opportunity to interview them. These facts, considered in conjunction with the fact that the superseding indictment charged the same offense as the original indictment while reducing the counts against Cornbread from ten to six, establish that the denial of the continuance worked no detriment to him.

### III

■ The next consideration is whether the giving of the government's instruction defining "knowingly" constituted plain error. Cornbread did not object to this instruction in the trial court. However, rely-

---

**2.** We note that the analysis in *United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980), did not involve an interpretation of either section 3161(d) or 3161(h)(6). In *Dennis* the court stated that "[t]he real issue is whether the court abused its discretion in determining that the

ends of justice served by ... [granting the government's request for a continuance] ... outweighed the best interest of the public and the defendant in a speedy trial," *id.* at 794, and arrived at its conclusion by applying § 3161(h)(8)(A).

ing on *United States v. Winston*, 558 F.2d 105 (2d Cir. 1977), Cornbread now asserts that the giving of this instruction was reversible error because it permitted a finding of guilt for any wrongful motivation for the violent acts, whereas the law requires that the extortionate means must be motivated by an attempt to collect an extension of credit or to punish for nonrepayment.

We cannot agree. As the government points out, Cornbread reads the instruction in isolation rather than in conjunction with the other instructions, as it should be read. The government instruction on the issues and burden of proof expressly stated that there could be a finding of guilt only upon proof, beyond a reasonable doubt, that the defendant knowingly participated in the use of extortionate means to collect or attempt to collect an extension of credit.

*United States v. Winston*, 558 F.2d 105 (2d Cir. 1977), does not support Cornbread's argument. In *Winston*, involving § 2 of the Railway Labor Act, 45 U.S.C. § 152, the trial judge instructed the jury that the defendant's conduct was willful "if it was performed knowingly, intentionally, purposefully, or deliberately." 558 F.2d at 107. Since the statute required the voluntary and intentional violation of a known legal duty, the appellate court concluded that this instruction was erroneous because more was required to establish mens rea, for purposes of the Railway Labor Act, than mere consciousness or awareness. Thus, the plain error in *Winston* was not a failure to link the willful action to the other elements of the crime, but a failure to define "willful" properly. In contrast, we find that the instruction defining "knowingly" and the instruction on the issues and burden of proof considered in tandem correctly stated the law.

## IV

Defendant contends that the evidence is insufficient to sustain his conviction of extortionate collection practices or Bragster's

conviction as an aider and abettor. The thrust of his argument is that neither conviction can stand because the evidence does not establish that the shootings were connected with an attempt to collect an extension of credit or to punish the men for their nonrepayment. In fact, Cornbread insists that there is no evidence that he extended credit to Hardy or Conkrite. Alternatively, he claims that even if he had extended credit to Hardy or Conkrite, the evidence indicates that he shot them for reasons other than their failure to pay their debts.

At the outset, we note that the statute defines extension of credit very broadly and includes any agreement to defer repayment of a debt. *United States v. Mase*, 556 F.2d 671 (2d Cir. 1977), cert. denied, 435 U.S. 916, 98 S.Ct. 1472, 55 L.Ed.2d 408 (1978).[3] The record reveals that: (1) Hardy and Conkrite purchased heroin from Cornbread on numerous occasions, tr. at 54–61, 189; (2) Hardy had paid for much of his heroin with checks which bounced and he was indebted to Cornbread for the amount of the bad checks, tr. at 68; (3) Cornbread continued to accept checks in return for heroin even after some checks had bounced, tr. at 189; (4) Conkrite had received $150 worth of heroin from Cornbread which was still owing at the time of the shootings, tr. at 190; (5) Horton told Hardy he would give Hardy time to honor the checks, tr. at 68; (6) and Conkrite and Hardy brought the air conditioner to Cornbread to reduce the debt owed on the checks, tr. at 191.

We must evaluate this evidence in the light most favorable to the prosecution, deferring to the jury's weighing of the evidence and credibility determinations. *United States v. Niemiec*, 611 F.2d 1207 (7th Cir. 1980). In considering the sufficiency of the evidence, this court need only determine whether there is substantial evidence to support the verdict; we need not reweigh conflicting evidence. *United States v. Parnell*, 581 F.2d 1374 (10th Cir. 1978), cert.

---

**3.** It is clear that § 894 applies to loans other than loansharking types of loans. *United*

*States v. Schaffer*, 539 F.2d 653 (8th Cir. 1976).

*denied sub nom. Cox v. United States*, 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 44 (1979). The undisputed evidence that Hardy had yet to honor the forged checks he gave Cornbread for the heroin is sufficient evidence to support the jury's finding that Cornbread extended credit to Hardy.

There is also substantial evidence to establish that Cornbread extended credit to Conkrite. Conkrite expressly stated, under oath, that Cornbread gave him $150 worth of heroin for which Conkrite had not paid on July 5th, the night of the shooting. Tr. at 189, 190, 115. In addition, the record is replete with statements from which the jury could reasonably infer that Hardy and Conkrite were partners who not only shared the heroin they each received from Cornbread, but also shared the cost of that heroin and that all parties involved believed Conkrite and Hardy to be equally responsible for the money owed. *See, e.g.*, tr. at 55–62, 189, 191. The evidence clearly supports the conclusion that both Hardy and Conkrite were indebted to Cornbread, and the fact that there is also some evidence to suggest that Cornbread never intended to extend credit and that his violence may have been triggered, in part, by the fact that his victims had stolen his washer and dryer does not compel a finding that the evidence was insufficient to sustain the convictions. *See United States v. Niemiec*, 611 F.2d 1207 (7th Cir. 1980).

We reject the argument that the evidence against Bragster merely showed that he was unable to prevent the shootings and, thus, cannot support a finding that he aided and abetted Cornbread's criminal acts. It is true, as defendant emphasizes, that Bragster never threatened or hurt the victims and that he administered first aid to Hardy and assisted the men upstairs after they were wounded. It is also clear, however, that Bragster was armed; was one of the four men who stood guard over the victims; was present while Cornbread yelled at the

victims for owing him money and asked them to sign a note confessing to the debt; and urged the men to answer Cornbread's questions.[4] From this evidence the jury reasonably could have concluded that Bragster aided and abetted his brother's extortionate conduct.

## V

Cornbread was convicted of two counts of extortionate practices and received two separate sentences. He contends that the imposition of two sentences is improper, maintaining that all his activities culminated in a single attempt to collect credit. He reasons that, at most, he can be guilty of one offense.

Defendant concedes that 18 U.S.C. § 894 does not specifically define the unit of prosecution. However, he argues that, because a primary goal of § 894 is to eliminate extortionate credit transactions which fund underworld racketeers, several extortionate acts representing a course of action directed at collecting one debt constitutes one offense, regardless of the number of people or number of extensions of credit involved.

We agree that the statute is aimed at eliminating the economic support loan-sharking and other extensions of credit provide to organized crime. We do not think, however, that this fact supports defendant's argument that he is guilty of only one offense. Under § 894 an individual is guilty of extortion whenever that individual knowingly participates in "the use of any extortionate means ... to collect or attempt to collect any extension of credit or to punish any person for nonrepayment." 18 U.S.C. § 894. We read this language to mean that § 894 prohibits extortionate conduct directed at a single individual. Thus, we hold that since two individuals were involved here, each of whom owed money to Cornbread and were victims of Cornbread's extortionate means in attempts to collect

4. Defendant insists that Bragster's statement urging Hardy and Conkrite to answer Cornbread's questions shows that he was trying to prevent the violence. The jury apparently did not agree and we decline to question the jury's credibility determination.

those debts, Cornbread was properly convicted of two separate crimes.[5]

## VI

■ The final issue is whether the trial judge abused his discretion when he imposed the maximum sentence for each conviction because he stated, just prior to the imposition of sentence:

> I consider, based upon what I've heard and what the presentence report shows, that you really have been and are a major and significant criminal force in this community, and that you have been for a number of years. I'm afraid that I have no proof of this, but that the evidence that's before me here is really the tip of the iceberg.

Tr. of sentencing hearing at 32. On the basis of this statement, Cornbread claims that the trial judge was influenced by assumptions which were wholly unsubstantiated by proof.

As this court has noted, the task of sentencing "is not a simple one for the conscientious judge, indeed [it] is an awesome responsibility, and it is easy with hindsight to seize out of context upon words, perhaps prompted by judicial soul-searching, to claim that the sentence was somehow improperly influenced." *United States v. Cardi*, 519 F.2d 309, 313 (7th Cir. 1975). Cornbread is indeed attempting to seize words out of context in an attempt to show prejudice. The record indicates that prior to the imposition of sentence the trial judge carefully considered not only the attorneys' and the defendant's comments, but also the presentence report and the defendant's criminal record. The judge stated that, based on Cornbread's extensive criminal record, repeated involvement with violence and hard drugs, and long history of drug abuse and heroin addiction, he considered him a danger to the community. For all these reasons the judge concluded that the maximum sentence should be imposed. Analyzing the sentencing hearing in its entirety, we do not conclude that the judge's isolated comment indicates that Cornbread's sentence was based on improper or unreliable information. The weight to be given to the various factors relevant to sentencing is strictly committed to the trial court's discretion, and on the record before us there is no showing of a clear abuse of that discretion. *United States v. Main*, 598 F.2d 1086 (7th Cir.), *cert. denied*, 444 U.S. 943, 100 S.Ct. 301, 62 L.Ed.2d 311 (1979).

Accordingly, the judgment of the district court is

AFFIRMED.

SWYGERT, Senior Circuit Judge.

I respectfully dissent because I believe that the denial of the continuance was in violation of the Speedy Trial Act and an abuse of discretion. The Speedy Trial Act ("the Act") serves two related functions: it protects the interests of the accused and the public in a speedy trial while allowing the accused sufficient time to prepare his defense. These appeals involve primarily the second function.

Section 3161(c)(2) of the Act provides that a trial shall not commence (absent waiver) until thirty days after the defendant first appears. This section recognizes that an accused generally needs thirty days to prepare his defense based on the charges detailed in his indictment. Section 3161(d)(1) provides that if an indictment is dismissed on motion of the defendant and a new indictment is filed, the defendant is entitled to a new thirty-day period within which to prepare for trial. As it relates to these appeals the purpose of section 3161(d)(1) is clear. If an indictment is not sufficiently detailed to allow a defendant to prepare for trial, and the defendant files a motion for the indictment's dismissal, it would be unfair to force the defendant to trial without allowing him thirty days to prepare his defense based on a new, suffi-

---

5. We do not go so far as concluding, as the government would have us do, that § 894 is violated whenever any person is a victim of extortionate means relating to the collection of a debt, regardless of whether that person is the debtor or merely a threatened third party. Resolution of the issues here does not require us to define the reach of § 894.

cient indictment. This is exactly the situation in the instant case.

Despite the majority's reluctance to address the issue, I think it is safe to conclude that the first indictment is obviously insufficient. "A vital function of an indictment is to 'provide such description of the particular act alleged to have been committed by the accused as will enable him properly to defend against the accusation.'" *United States v. Tomasetta*, 429 F.2d 978, 979 (1st Cir. 1970). To perform this function of enabling an accused to prepare his defense, the indictment "must set forth the elements of the offense charged and contain a statement of the facts and circumstances that will inform the accused of the . . . offense . . . charged." *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979). "The failure of an indictment to detail each element of the charged offense generally constitutes a fatal defect." *United States v. King*, 587 F.2d 956, 963 (9th Cir. 1978). *See, e.g., Batchelor v. United States*, 156 U.S. 426 (1895).

The original indictment on these appeals is insufficient because it fails to detail any of the elements of the offense[1] excluding the extortionate act itself. The indictment provided neither the name of the victim, a description of the place of the crime, nor any description of the extension of credit. In *Tomasetta, supra*, 429 F.2d 978, the First Circuit held an indictment insufficient because it failed to specify the name of the victim, the location of the alleged offense, and the means by which the threats of extortionate means were communicated. *Tomasetta* is analogous to the facts of this case. The Hortons could not have prepared an adequate defense to the first indictment if they had been given thirty days or thirty weeks. The indictment simply failed to provide them with enough information.

For this reason, the Hortons moved to have the indictment dismissed on October 23, 1980. Oral arguments were not heard on the motion to dismiss until November 14, ten days before the trial. After hinting that the indictment was likely insufficient,[2] the district court took the motion under advisement. On November 18 the Government obtained a superseding indictment which I reluctantly agree is barely sufficient.[3] The trial commenced on November

---

1. Count I of the indictment stated:

   On or about the 6th day of July, 1979, in the Central District of Illinois,

   EDWARD LEE HORTON

   knowingly, willfully and unlawfully did participate in the use of extortionate means to attempt to collect an extension of credit from an individual, whose initials are "C.H.H.", and to punish that individual for the nonrepayment thereof, in that EDWARD LEE HORTON expressly and implicitly threatened the use of violence and other means to cause harm to the person, reputation and property of the individual and did further use violence and other criminal means in causing harm to the person of that individual in that EDWARD LEE HORTON shot the individual in the left leg with a firearm.

   All in violation of Title 18, United States Code, Section 894.

   I believe that the failure to include *any* facts regarding the extension of credit was fatal of itself. Without sufficient details, a defendant is precluded from preparing a defense showing that there was no credit or that the credit was extinguished or any other number of defenses relating to the extension of credit.

   The original indictment was fatally flawed for another reason as well. An indictment must be sufficiently detailed to ensure that a defendant is prosecuted on the facts presented to the grand jury. *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979). I can only speculate as to what facts were presented to the grand jury to prove an extension of credit.

2. Transcript, November 14, 1980, p. 40, reads in pertinent part:

   [Government counsel:] As a matter of law if the Court deems it necessary, we would be happy to respond with Seventh Circuit cases that would—would attempt to distinguish the First and Eighth Circuit cases that have been previously cited.

   THE COURT: You should.

   United States versus Tomasetta sets out the indictment which they apparently held to be bad, and it does seem to be similar, just in—I was just reading it on the bench as you were arguing. You better.

3. I believe the majority lets the Government off too easily in stating that the superseding indictment is less detailed than desirable. I find the Government's conduct deplorable. The indictment stated that the amounts of credit and the dates of the transactions were unknown. This is not exactly true. The Government presented

24. Because a legitimate indictment is the only fruitful starting point for trial preparation, the defendants' preparation time was reduced to six days. I believe that based on these facts, the Hortons were entitled to a new thirty-day preparation period as required by section 3161(d)(1) of the Act.

The majority correctly states that the question of whether the thirty-day limit begins to run anew with reindictment turns on which party was responsible for dismissing the original indictment. The majority incorrectly concludes, however, that only a party who receives a favorable ruling on a motion to dismiss can be responsible for dismissing an indictment within the meaning of the Act. While purportedly protecting the letter of the Act, the majority has violated its spirit. Accepting the majority's position means that the Government can file a sham indictment containing no details of the offense and effectively prevent the accused from preparing his defense. If the accused moves to dismiss the sham indictment, the Government steps in with a superseding indictment and has the sham indictment dismissed, "technically" on the Government's motion. By proceeding along this course, as the Government did in the instant case, the Government robs the accused of his thirty-day trial preparation period. The Speedy Trial Act has then become the Speedy Conviction Act.

I believe that the Hortons were responsible for dismissing the original indictment. A literal interpretation of the Act is not mandated where it results in a blatant transgression of the purpose of the Act. A more reasonable interpretation of section 3161(d)(1) is that the words "dismissed on motion of the defendant" can refer to a situation, like that present here, where the first indictment is clearly insufficient and the defendant's motion to dismiss is the proximate cause of the superseding indictment. The Hortons' motion to dismiss the indictment was the proximate cause of the indictment's dismissal in this case. This is clearly inferred from the circumstances surrounding the dismissal of the first indictment: the indictment was obviously insufficient, the district court indicated it was inclined to agree with the Hortons' motion to dismiss and the Government returned to the grand jury to obtain a more-detailed indictment without waiting for the court to rule on the Hortons' motion. Given these circumstances, the indictment was "dismissed on motion of the defendant" within the ambit of section 3161(d)(1). This interpretation does no harm to the language of the Act and it does preserve its intent to provide an accused with adequate preparation time.

The granting of the Hortons' motion for a continuance would not have resulted in a violation of the seventy-day indictment to trial limit imposed by the Act. The motion for a continuance could have been considered a waiver of the defendants' right to a trial within seventy days. Further, under section 3161(h)(8)(A) of the Act, the granting of a continuance can be excluded from the time within which a trial must commence.

Even if the denial of the continuance did not violate section 3161(d)(1) of the Speedy Trial Act, the denial was in contravention of section 3161(h)(8)(B)(iv) of the Act. Section 3161(h)(8)(B) contains a list of factors which a judge must consider in determining whether to grant a continuance. Subsection (iv) provides: "Whether the failure to grant such a continuance in a case, which taken as a whole, is not so unusual or so complex . . . would deny counsel for the defendant . . . the reasonable time necessary for effective preparation. . . ."

As stated above, I believe that a valid indictment is the foundation of effective trial preparation. The Hortons had but six days to prepare a defense after a valid indictment was filed. The original indictment was of little use to them. The Hortons' strategy at trial was to deny the existence of an extension of credit. Until the

seven checks at trial and referred to approximately fifteen others as well. This information could easily have been included in the indict-

ment. There is no salutary reason which explains the Government's conduct.

superseding indictment was filed, the defendants had no idea what proof the Government would offer to show an extension of credit. Indeed, prior to the filing of the second indictment, the Hortons had been misled to believe that the credit related to a dispute arising out of stolen goods.[4] It was not until November 18 that this misconception was corrected. Denying the continuance denied the defense "the reasonable time necessary for effective preparation."

I also believe that denying the continuance constituted an abuse of discretion. The majority determined that there was no abuse of discretion because the defendants knew the names of the victims prior to the date the superseding indictment was filed. This is true, but it does not reflect the whole picture. The names of the victims were received by the defendants in a bill of particulars on November 10. At this point, the defendants had fourteen days until trial: Congress has determined that thirty days is a more appropriate preparation period. This congressional determination should not be so easily discarded.

The fourteen-day period of access to the victims' names alone might not be sufficient to establish an abuse of discretion, but it is a factor weighing in the Hortons' favor. The substantial prejudice to defendants really arises out of the paucity of detail concerning the extension of credit. The first indictment contained no details concerning the extension of credit. The superseding indictment stated that the credit involved heroin transactions, but the dates and amounts of the credit transactions were unknown. Based on this scanty indictment, the defendants attempted to prepare a defense showing that there was no extension of credit or if there was an extension of credit, the assault was motivated for reasons other than an attempt to collect the credit. Six days was too short a period to expect counsel to prepare an adequate defense. My conclusion with respect to an abuse of discretion might be different

if the superseding indictment had precisely detailed the credit transactions, but this is not the case here. The victims and the defendants on these appeals were involved in approximately one thousand heroin transactions. How was counsel expected to discover which, if any, of these transactions involved credit in a six-day period?

I have examined the same transcript (dated November 21, 1980) which the majority believes shows no prejudice and I do not agree with their conclusion. Each and every defense counsel present stated he would be prejudiced by going to trial six days after the indictment. The district court was informed that the defendants had the names of the victims only since November 10 (tr. at 28), and the judge knew that the defendants would have only six days to work with the information regarding the extension of credit (tr. at 27). On page 37 of the transcript (the majority apparently only read pages 24–30), Edward Horton's attorney states:

> They changed the indictment now. They didn't give me a date when this transaction took place, when the credit was extended. They say the exact date unknown. They are saying there was a transaction involving narcotics. I haven't had any time since getting this indictment to discuss this with my client to find out if there's any truth to this particular indictment at all, and to what his particular defense would be. Yet I am expected to go to trial Monday morning on this, and I—I just think that's grossly unfair. I won't have any chance to investigate whether he has alibi witnesses for these particular offenses, what he's talking about, whether there was any extension of credit at that time or not. It—it's just—it's inconceivable that they would want us to go to trial on such short notice and take it up.

What more could counsel have said?

The record shows that the trial judge did not carefully weigh the rights of both sides as the majority believes he did. The judge erroneously thought that the new indict-

---

4. At a bond reduction hearing, the Government informed the district court that the extension of credit related to a dispute arising out of stolen goods.

ment was simply a technical matter. It was not. It was the first valid indictment. Further, the judge believed that the defendants had all the information contained in the superseding indictment when the bill of particulars was filed on November 10. This is incorrect. The bill of particulars contained only the names of the defendants.

The district court and the majority have simply chosen to ignore the prejudice involved in forcing a defendant to trial within six days of receiving vital information relating to a key element of the offense charged. I believe that this is in contravention of sections 3161(d)(1) and 3161(h)(8)(B)(iv) of the Speedy Trial Act. I also believe that there was an abuse of discretion independent of the Act.

I would reverse.