**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Richard FELDMAN and Richard Martenson, Defendants-Appellants.**

**Nos. 83–1327, 83–1328, and 84–1264.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 9, 1984.

Decided May 1, 1985.

As Amended May 3, 1985.

E. David Rosen, Rosen & Rosen, Miami, Fla., Douglas W. Thomson, Thomson & Hawkins, St. Paul, Minn., John R. Wyldee, Rosen & Rosen, P.A., Miami, Fla., for defendants-appellants.

Alexander S. Vesselinovitch, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD and CUDAHY, Circuit Judges, and WISDOM, Senior Circuit Judge.*

WISDOM, Senior Circuit Judge.

This case presents the question whether a deposition taken in an earlier civil proceeding is admissible in a later criminal prosecution. The defendants were found guilty of several counts of wire fraud from practices in connection with the sale of precious metal futures. The government's case relied heavily on the deposition of a former business associate taken without any cross-examination in an earlier civil

---

* The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

proceeding. On appeal, the defendants argue that the admission of this deposition violated their right to confront witnesses against them. We agree and accordingly reverse.

## I. FACTS AND PROCEEDINGS BELOW

The defendants, Richard Feldman and Richard Martenson, were upper echelon managers in first Guaranty Metals ("FGM"), a Florida corporation engaged primarily in investing in leveraged futures contracts in precious metals. Herbert Sanburg, who was later to provide the government with abundant testimony against Martenson and Feldman, was president of FGM, although the testimony at trial shows that Sanburg was less involved in the daily operations of the firm than Feldman. Sanburg left FGM in August 1979.

During the gyrations of the precious metals market from July 1979 through January 1980, FGM retreated from its prudent policy of fully hedging customer orders;[1] the company also began to have increasingly great "spreads" between the prices at which a customer could buy and sell the same commodity on a given day. FGM's customers lost money. The company filed for bankruptcy on January 29, 1980. On January 30, 1980, FBI agents searched FGM's offices under a warrant. The same day, the Commodity Futures Trading Commission ("CFTC")[2] filed a complaint against FGM alleging that the company defrauded customers by its salesmen's misrepresentations concerning hedging and prices. CFTC sought to freeze the assets of FGM and to obtain its profits.

As part of this "disgorgement" action, CFTC sought the deposition of the three defendants in its case: Sanburg, Feldman, and Martenson. Each party received notice of the depositions through counsel. Neither Feldman nor Martenson attended the Sanburg deposition, nor did their attorneys represent them at the deposition. Sanburg, however, had agreed with the government the day before his deposition to testify against Feldman and Martenson in return for a promise that Sanburg himself would not be a target of any later legal proceedings. This agreement between Sanburg and the government was not disclosed for almost a year, until just a short time before Feldman's and Martenson's criminal trial. At the time of Sanburg's deposition, the government had not returned a criminal indictment against any party in connection with FGM. Sanburg, whom the government knew to be terminally ill, died less than a month after his deposition.

On December 17, 1981, ten months after Sanburg gave his deposition, the U.S. Attorney in Chicago returned an indictment charging Richard Feldman and Richard Martenson with mail fraud in violation of 18 U.S.C. § 1341 (1982), wire fraud, id. § 1343, and fraudulent bullion transactions, 7 U.S.C. §§ 13(b), 23(b) (1982). In an order and memorandum of May 28, 1981, the district court ruled that it would admit the Sanburg deposition if the government could establish that Sanburg and the present defendants were parties in the civil case in which the deposition was taken; that the defendants were represented by counsel at that time; and that the defendants received notice of the deposition and were afforded an opportunity to be present. On November 1, 1981, the district court conducted a hearing on the admissibility of the deposition. The court admitted the deposition on the grounds that the de-

---

**1.** When FGM and a customer entered a leverage contract, it was to be "hedged", or backed, by FGM's purchase of the physical metal or by a contract to purchase metals equal to the amount that the customer had purchased. This hedging by FGM would insure that FGM could either pay profits or deliver the metal should the customer wish. This hedging should be almost simultaneous with the customer's purchase to protect the broker against any substantial increases in price. Without hedging, the company would have to pay its own funds to perform the contract. Customers valued FGM's policy of hedging because of the security hedging provided. Salesmen for FGM were informed that FGM was one of the few fully hedged companies handling commodity investments.

**2.** CFTC is a government agency created to police the trading of commodity futures.

fendants had an adequate opportunity to appear at the Sanburg deposition, that the defendants knew what Sanburg would say, and that the defendants were represented by counsel and were parties to the civil litigation for which the deposition was taken. The deposition became the centerpiece of the government's prosecution.

On October 4, 1982, a grand jury returned a superceding indictment. The superseding indictment added a RICO charge, 18 U.S.C. § 1962(c) (1982), and asked for forfeiture, *id.* § 1963(a)(1)–(2). The district court denied a motion for continuance. Trial began twenty-six days later, on November 1, 1982. The court entered acquittals on the transaction counts, and the jury returned guilty verdicts on all remaining counts. The court imposed a prison sentence of twelve years and a fine of $38,000 on each of the defendants.

Both defendants appeal, arguing that the introduction of the deposition violated their right to cross examination, that their trial date was unacceptably close to the return of the indictment, and that both the prosecutor and the court committed additional reversible errors during the trial.

## II. DISCUSSION

### A. Use of a Civil Deposition in a Subsequent Criminal Proceeding

Numerous courts have approved the admissibility of a transcript of pre-trial proceedings when the declarant was cross-examined during the prior proceedings. *Ohio v. Roberts,* 1980, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597; *Phillips v. Wyrick,* 8 Cir.1977, 558 F.2d 489, 496, *cert. denied,* 1978, 434 U.S. 1088, 98 S.Ct. 1283, 55 L.Ed.2d 793; *United States ex rel. Gayden v. McGinnis,* N.D.Ill.1983, 574 F.Supp. 661. Generally, the *opportunity* to cross examine the declarant at the prior proceeding is sufficient. "The actual use then made of the opportunity becomes a matter of defense strategy, and deliberate trial tactics do not ordinarily exact constitutional protection." *Phillips,* 558 F.2d at 496. Several courts have therefore admitted the transcript of a witness's testimony from a pre-

liminary hearing even though the witness was subject to a less searching cross-examination than would have been the case at trial. *United States ex rel. Haywood v. Wolff,* 7 Cir.1981, 658 F.2d 455, 461–62, *cert. denied,* 1981, 454 U.S. 1088, 102 S.Ct. 649, 70 L.Ed.2d 625.

The government, relying on this line of cases, urges us to affirm the district court's admission of Sanburg's deposition. In *Phillips,* for example, the defendant's 15-year-old accomplice, Chris Brownfield, testified as a witness for the prosecution during a preliminary hearing before a magistrate. The defendant was represented by counsel at the preliminary hearing, and had the opportunity to cross-examine Brownfield. When the case came to trial, Brownfield invoked his privilege against self-incrimination, and refused to answer any substantive questions. The State called the assistant prosecutor who had conducted the preliminary hearing. This prosecutor summarized Brownfield's testimony (no stenographer was present at the preliminary hearing), which corroborated the victim's trial testimony. The jury convicted Phillips, who pursued his appeal through the state courts and then brought a habeas petition in federal court.

The Court of Appeals for the Eighth Circuit allowed the introduction of the testimonial reconstruction of Brownfield's testimony. The Court found that there was no violation of the Confrontation Clause because Brownfield's statement had been made under oath in a "truth-inducing" courtroom atmosphere before "a judicial tribunal"; Phillips was represented by counsel at the hearing and had the opportunity to cross-examine both Brownfield and the prosecutor; and Phillips had the opportunity to call witnesses to counter any discrepancies in the prosecutor's reconstruction of Brownfield's testimony. *Phillips,* 558 F.2d at 494–95.

We find that *Phillips* is not controlling for two reasons. First, the co-defendants Feldman and Martenson did not have a meaningful opportunity to cross-examine

Sanburg during his deposition. Although it is true that Feldman and Martenson had notice of the deposition, at the time of Sanburg's deposition the co-defendants had no knowledge of the agreement between the U.S. Attorney and Sanburg that Sanburg would not be the subject of the grand jury investigation. Nor did they have any formal notice of criminal proceedings against them, and the evidence discloses that the grand jury investigation had not commenced when Sanburg was deposed. Feldman and Martenson had no reason to suspect that Sanburg would incriminate them on criminal charges. In these circumstances, mere notice of the deposition does not constitute the opportunity, in any real sense, for Feldman and Martenson to cross-examine Sanburg. In *Phillips*, by contrast, the defendant had been indicted before the hearing and therefore knew or should have known that his accomplice might incriminate him on criminal charges.

There is another distinguishing factor. Because no criminal indictment had been entered in the present case, the co-defendants would not have had the issues framed with sufficiently clarity to allow for an intelligent cross-examination even if the defendants had been present during Sanburg's deposition. To contrast again with *Phillips*, the defendant knew at the time of Brownfield's interrogation of the specific charges that he was to defend against.[3]

In admitting Sanburg's deposition, the district court relied on *United States v. Ricketson*, 7 Cir.1974, 498 F.2d 367, *cert. denied*, 1974, 419 U.S. 965, 95 S.Ct. 227, 42

L.Ed.2d 180. In *Ricketson*, the defendant challenged the admission of the deposition of the owner of some stolen goods regarding the value of the goods. In admitting the deposition, the court held: "Ricketson's counsel was given full opportunity to cross-examine [the deponent]. This opportunity came after notice that the deposition was being taken for use at trial—an advantage Green's counsel did not have in *California v. Green* [1970, 399 U.S. 149, 90 S.Ct. 19830, 26 L.Ed.2d 489]. The defendant was present at the deposition to assist his counsel." *Id.* at 374. Here, counsel had no notice that Sanburg's deposition was going to be used in a criminal trial. In fact, the defendants were not indicted until almost a year after the notice of the deposition was delivered. We therefore find *Ricketson* and similar cases inapposite.

We have been unable to find any case squarely addressing the use of an uncross-examined witness' civil deposition in a criminal proceeding. We therefore undertake our own analysis under both Fed.R.Evid. 804(b)(1) and the Confrontation Clause to determine if Sanburg's deposition was properly admitted.

### 1. Inadmissibility Under Fed.R.Evid. 804(b)(1)

Under Fed.R.Evid. 804(b)(1), the testimony or deposition of a witness taken in another proceeding is admissible if the party against whom the testimony is now offered had "an opportunity and similar motive" to examine the witness.[4]

---

**3.** The government urges us to find a waiver of Feldman's and Martenson's right to cross-examination because the two defendants were "aware of Mr. Sanburg's severe illness and could not be certain that Mr. Sanburg would be available for subsequent depositions or testimony". Appellee's brief at 27. Assuming that the defendants did know that Sanburg had cancer, there is no basis to infer the defendants knew that Sanburg was *terminally* ill. We decline to predicate the waiver of a constitutional right in a criminal trial on a layman's prognosis. Even if the defendant knew at the time of the deposition for a certainty that Sanburg would soon die, the testimony would still be inadmissible if, as here, the alter proceedings were sufficiently different from the original proceedings that the deposi-

tion failed to pass the "similarity of motive" requirements of Fed.R.Evid. 804(b)(1) or the "indicia of reliability" test of the Confrontation Clause.

**4.** Fed.R.Evid. 804(b)(1) reads:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predeces-

Fed.R.Evid. 804(b)(1) requires that a defendant have sufficient notice and opportunity for cross examination. Putting aside the question of notice,[5] Feldman and Martenson did not have the opportunity to cross-examine Sanburg. Mere "naked opportunity" to cross-examine is not enough; there must also be a perceived "real need or incentive to thoroughly cross-examine" at the time of the deposition. *United States v. Franklin*, D.D.C.1964, 235 F.Supp. 338, 341. At the time of Sanburg's deposition, the defendants Feldman and Martenson were not adverse parties to Sanburg. There was no reason for Feldman or Martenson to believe that Sanburg, who was a co-defendant in the CFTC action, would testify against them on criminal charges. Both Feldman and Martenson had chosen not to defend in the CFTC's civil suit, and they could reasonably expect that Sanburg, who had left the company well before its demise, would chose to do the same. It is undisputed that not until after the deposition were Feldman and Martenson informed of the non-subject agreement between Sanburg and the government. The defendants therefore did not make a meaningful waiver of their right to cross-examination.

Fed.R.Evid. 804(b)(1) also requires that even if Feldman and Martenson had sufficient notice and opportunity to cross-examine Sanburg, they must have had a "similar motive to develop the testimony by direct, cross, or redirect examination". In determining whether a party had such a motive, a court must evaluate not only the similarity of the issues, but also the purpose for which the testimony is given. *Zenith Corp. v. Matsushita Electric Indus-*

*trial Co.*, E.D.Pa.1980, 505 F.Supp. 1190, 1251, *aff'd in part, rev'd in part*, 3 Cir. 1983, 723 F.2d 319. Circumstances or factors which influence motive to develop testimony include "(1) the type of proceeding in which the testimony is given, (2) trial strategy, (3) the potential penalties or financial stakes, and (4) the number of issues and parties". *Id.* at 1252 (footnotes omitted). Consideration of the second and third criteria persuades us that under Fed.R. Evid. 804(b)(1)'s "similarity of motive" test, Sanburg's deposition was inadmissible in the criminal trial.

Sanburg's deposition was taken in a civil proceeding and ultimately used in criminal prosecution. It is well-settled that strategies for civil and criminal trials may differ greatly. As one court has observed, in antitrust litigation where the defendants faced criminal prosecution and later civil proceedings and the plaintiffs sought to admit into the civil proceeding a witness's cross-examined deposition taken in the criminal suit:

> "[S]uccessive defendants do not always share the same interests when defending against claims which arise out of the same circumstances. For instance, in the antitrust field, a defendant in a criminal trial may be motivated in its defense to protect itself against liability by implicating other defendants—perhaps defendants who have pled *nolo contendere* to the same criminal charges."

*In re Screws Antitrust Litigation*, D.Mass.1981, 526 F.Supp. 1316, 1319. The court therefore ruled that the deposition failed to qualify for admission under Fed. R.Evid. 804(b)(1).

---

sor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

**5.** It is not clear that the defendants received proper notice as required in CFTC's litigation under Fed.R.Civ.Pro. 30(b). The government gave notice of Sanburg's deposition about a week before the deposition, but then rescheduled it twice in the next few days. Apparently the government attorneys left messages with secretaries. We do not decide the question whether such practices conform to the "reason-

able notice" requirement of Fed.R.Civ.Pro. 30(b) because of the view we take in this case of the question of "similarity of motive" and because of the scant development of the question of notice on appeal. We therefore also decline to decide whether this notice should have conformed to Fed.R.Crim.Pro. 15, as is commonly required when the government intends to preserve evidence for a later criminal prosecution. *See United States v. Benfield*, 8 Cir.1979, 593 F.2d 815.

Here Feldman and Martenson pursued opposite strategies in the civil and criminal trial. Neither of the defendants contested CFTC's motion for a permanent injunction or ancillary relief. Their strategy was not to contest any CFTC's claims. In the criminal case, by contrast, the defendants vigorously sought to prove their innocence.

The admission of Sanburg's deposition also fails under the third criterion enunciated in *Zenith*, that is, whether the "potential penalties or financial stakes" are similar. In the civil proceeding, neither Feldman nor Martenson had any exposure to personal liability. Martenson had severed his ties with FGM before its demise. Feldman, who was still associated with FGM upon its bankruptcy, nevertheless was willing to let the government obtain the declaratory and injunctive relief it sought, and his attorney allegedly offered to enter a consent judgment on behalf of Feldman several months before the deposition. It appears from the record that both Feldman and Martenson had little personal or financial stake in CFTC's litigation. It is understandable that neither party attended Sanburg's deposition in that case. In the subsequent criminal proceeding, however, the defendants faced, and received, fines and imprisonment.

The Supreme Court has recognized that a criminal defendant's liberty is "an interest of transcending value". *In re Winship*, 1970, 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375. As the Court observed: "The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction." *Id.* The stakes at the time of the Sanburg deposition—disgorgement of a trading company's profits—were quantitatively less and qualitatively different from the stakes in the criminal trial. *See also Zenith Radio Corp. v. Matsushita Elec. Ind. Co.*,

E.D.Pa.1980, 505 F.Supp. 1190, 1251 n. 77, *aff'd in part, rev'd in part*, 3 Cir.1983, 723 F.2d 319, where the court observed that "[a] discrepancy in the financial stakes involved in the two cases may also affect motive. An action in small claims court may not be defended with the same vigor as an action where considerably more is involved."

The Seventh Circuit has recently applied these criteria in determining the admissibility in a later criminal proceeding of a deposition from an earlier criminal case. See *United States v. Pizarro*, 7 Cir.1983, 717 F.2d 336, 349,[6] holding that the testimony of an unavailable witness is admissible if the statements were "subject to the scrutiny of a party interested in thoroughly testing its validity". In *Pizarro,* the government moved successfully during the defendant's third trial to exclude as hearsay a co-defendant's testimony at the second trial. That testimony implicated a third party rather the defendant, Pizarro, as the source of heroin in a drug distribution network. *Id.* at 348. The district court concluded that the government had been unable to develop fully the co-defendant's identification at the second trial. The district court denied the introduction of this exculpatory testimony at Pizarro's third trial because the codefendant was unavailable at the later trial. *Id.* at 349. Relying on the "similarity of motive" test in Fed.R.Evid. 804, the Court of Appeals reversed:

> " 'If the party against whom [the testimony is] now offered is the one *against* whom the testimony was offered previously, no unfairness is apparent in requiring him to accept his own prior conduct of cross-examination or decision not to cross-examine.' Consequently, our inquiry under this exception focuses not on the extent of cross-examination at the former proceeding, but on whether the party's handling of the testimony was 'meaningful in light of the circumstances

6. The Seventh Circuit had not decided *Pizarro* when the district court faced the question of the admissibility of Sanburg's decision.

which prevail[ed] when the former testimony [was] offered.' " *Id.* (quoting Fed.R.Evid. 804 advisory committee note) (emphasis and alterations in *Pizarro* ). The Court then found that the government had the motivation during the second trial to demonstrate that the co-defendant, Rodriguez, was not telling the truth when he identified the third party rather than Pizarro as the heroin supplier: "This testimony was not only highly damaging to their case against Pizarro, but also went to the issue of Rodriguez's credibility, which the government itself contends was the ultimate issue in [the second trial]." *Id.*

It is true that *Pizarro* is not squarely on point because the testimony was taken in a criminal proceeding and then offered in a retrial of the same charges. *Id.* at 340. Here, Feldman and Martenson were under indictment by CFTC at the time of Sanburg's deposition only for violations of 7 U.S.C. § 6*o* (1) (1982). The government sought to introduce the deposition in a later criminal prosecution alleging wire fraud and mail fraud. Our holding today, however, is consistent with the rigorous test established by the *Pizarro* court that the testimony be "subject to the scrutiny of a party thoroughly interested in testing its validity". *Pizarro*, 717 F.2d at 349. We have simply elaborated on that test by applying an analysis based on similarity of motive and of stakes. Judged by this expanded test, the two defendants reasonably lacked the motive to cross-examine Sanburg at his deposition.

■ Finally, the government has argued that the Trustee's questions to Sanburg count as cross-examination. The Trustee, however, seemed more interested in the movement of FGM's assets than in fraudulent sales practices. He was uninterested in discrediting Sanburg, which would have been of utmost importance to the co-defendants. In any event, the Trustee's questions cannot be deemed to have the same measure of scrutiny or the same focus as questions that would have come from a criminal defendant. In short, no

one at the Sanburg deposition had the requisite stake in the proceeding that would be necessary for them to be deemed a predecessor in interest to the criminal defendants, and those who did have the requisite stake had no reason to suspect that they should be there. We hold that the deposition fails to pass the test of Fed.R.Evid. 804(b)(1) and that Sanburg's deposition from the civil suit was not admissible under Fed.R.Evid. 804(b)(1).

**2. Inadmissibility Under the Confrontation Clause**

■ The claim under the Confrontation Clause requires a different analysis. The test for admissibility, once a declarant is unavailable, is whether the testimony bears sufficient "indicia of reliability". *Ohio v. Roberts*, 1980, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–2539, 65 L.Ed.2d 597. Although the "indicia of reliability" frequently include cross-examination, this is not universally true. This Circuit has allowed testimony from a preliminary hearing as evidence at trial even though the attorney's cross-examination had been restricted. The Court held that the test was "not whether there was an opportunity for full and complete cross-examination, but whether there are adequate indicia of reliability to justify its placement before the jury.... Indeed, several courts have concluded that a deceased witness' grand jury testimony may be admissible, even though totally untested by cross-examination, if it is sufficiently corroborated by other evidence to assure the minimal reliability required." *United States ex rel. Haywood v. Wolff*, 7 Cir.1981, 658 F.2d 455, 463, *cert. denied*, 1981, 454 U.S. 1088, 102 S.Ct. 649, 70 L.Ed.2d 625 (citations omitted).

Under this Court's test derived from *Roberts*, statements are admissible even where there was no cross-examination if it is clear (1) that the declarant actually made the statement in question; and (2) there is circumstantial evidence supporting its veracity. *Haywood*, 658 F.2d 463 n. 14. We find Sanburg's testimony of dubious credibility, in part because of the circumstances

in which it was obtained. "[W]hen immunity, plea agreements or even currying favor with the law enforcement officials is involved, there is substantial likelihood that the statement is self-serving and, thereby, unreliable." *United States v. Turner*, E.D.Mich.1978, 475 F.Supp. 194, 198. The Supreme Court has implicitly recognized this possible unreliability and has required that the government must disclose any and all consideration that it has held out to a witness or which the witness subjectively hopes for. *Giglio v. United States*, 1972, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104. Sanburg gave testimony which exculpated himself in exchange for immunity that would preserve his estate from any civil judgment, costs, or attorneys' fees. The government on appeal attempts to show that there is circumstantial evidence supporting Sanburg's deposition. While extrinsic evidence supports some of Sandburg's deposition, parts of the deposition stand without any external support. These gaps, combined with the deposition's devasting effect at trial, convince us that the admission of the deposition violates the Confrontation Clause as well as Fed.R. Evid. 804(b)(1).

## B. Violations of the Speedy Trial Act

The co-defendants argue that the district court's decision to hold the trial less than thirty days after the government's filing of a superseding indictment violated their rights under 18 U.S.C. 3161(c)(2) (1982), which establishes that any period of less than thirty days between an indictment and a trial is inadequate.

On December 12, 1981, a federal grand jury returned an eleven count indictment against Feldman and Martenson. On October 4, 1982, a grand jury returned a superseding indictment adding five counts to the original indictment. Three of the new counts alleged mail fraud violations for three later dates (the original indictment alleged a mail fraud violation for an earlier date). A fourth new count alleged a wire fraud violation for an earlier date (eight counts alleged wire fraud violations for

earlier dates). The fifth new count alleged a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c) (1982) and sought forfeiture pursuant to *id.* § 1963(a)(1)–(2).

The thirty-day provision of section 3161 is to ensure that the defendant is afforded a reasonable amount of time in which to prepare a defense. *United States v. Harris*, 9 Cir.1984, 724 F.2d 1452. There are, however, exceptions to the thirty-day provision. Under section 3161(h)(6), if the information or indictment is dismissed upon the government's motion and if the defendant is later reindicted for the same offense, the time limitation commences with the first indictment, with tolling during the time no indictment is outstanding. *See United States v. Sebastian*, W.D.N.Y.1977, 428 F.Supp. 967, 973, *aff'd*, 2 Cir.1977, 562 F.2d 211, *aff'd*, 2 Cir.1978, 578 F.2d 1372. In contrast, if the indictment is dismissed at the defendant's request, the time limitations began with the reindictment. 18 U.S.C. § 3161(d)(1) (1982).

The government argues that since the indictment was not dismissed on the defendants' motion, section 3161(d)(1) does not apply, and the thirty-day limitation should run from the period of the original indictment, relying on *United States v. Horton*, 7 Cir.1982, 676 F.2d 1165, *cert. denied*, 1983, 459 U.S. 1201, 103 S.Ct. 1184, 75 L.Ed.2d 431. In *Horton*, the government filed an original indictment that was insufficient by any lights. It failed to detail any elements of the offense charged excluding the extortionate act itself. The indictment did not provide the name of the victims or a description of the extensions of credit. *Id.* at 1174 (Swygert, J., dissenting). The defendant in *Horton* moved to have the indictment dismissed; the court held a hearing a month later and took the matter under advisement. Four days after the hearing, the government filed a superseding indictment and moved to have the original indictment dismissed. The court granted the motion and held trial six days later. The *Horton* court upheld the procedure:

"[T]he right to a new thirty day time period is dependent upon a favorable ruling on [a defendant's motion to dismiss the indictment].

. . . . .

"There was no time gap between the two indictments returned in this case. Nevertheless, a fair implication of the statute is that reindictment for the same offense is permissible and that the time period begins to run with the first indictment."

*Id.* at 1170.

█ The government would have us read *Horton* to require that the defendant obtain a dismissal of the indictment before the thirty-day period begins to run anew. The Ninth Circuit, when squarely faced with this question, declined a similar invitation. *See United States v. Harris,* 9 Cir. 1984, 724 F.2d 1452. Section 3161(c)(2) guarantees the defendant an additional thirty days after a new indictment to prepare his defense, to research additional charges, or to change trial strategy in light of the government's new charges. This provision is pre-empted for a re-indictment by section 3161(h)(6) if the government moves for and obtains dismissal of the original indictment, as it did in *Horton.* That subsection, however, explicitly requires the government to move for and obtain the dismissal. We are reluctant to expand a statutory scheme's exception, section 3161(h)(6), to include an implied dismissal by the government. We therefore hold that it was a violation of the Speedy Trial Act to try Martenson and Feldman less than thirty days after the return of the superseding indictment.

█ The new indictment must restart the thirty-day period for a second reason. The second indictment was not a reindictment for the same offense. It included a RICO count and a forfeiture count. Although these additional counts were based on the same course of conduct alleged in the earlier indictment and incorporated those counts by reference, they added new charges and new substantive offenses. An essential purpose of section 3161(c)(2) is to allow the defense time to prepare against the prosecution's charges. The addition of a RICO count here might have significantly altered the defense's tactics and strategies at trial. The RICO count might also have necessitated additional legal research, for which the co-defendants deserve the full period of preparation allowed under section 3161(c)(2).

**C. Additional Issues**

█ The co-defendants argue that the district court erred in denying motions for mistrial following the prosecutor's allegedly improper closing argument, that the district court erred in commenting on the failure of the defendant to testify, that the district court improperly admitted under Fed.R.Evid. 404(b) evidence of acts occurring six years before the period covered by the indictment, and that the "totality of circumstances" requires a reversal. We have examined each of these contentions and the record before us. We find that the prosecutor's remarks during closing argument, although improper, do not rise to the level of plain error. *United States v. Spain,* 7 Cir.1976, 536 F.2d 170, 174, *cert. denied,* 1976, 429 U.S. 833, 97 S.Ct. 96, 50 L.Ed.2d 97. The court's comments on the defendant's failure to testify are more properly read as curative remarks to the jury. We similarly find no error in the admission of the prior similar acts because they had substantial relevance to showing intent or the absence of mistake that outweighed the risk of prejudice. *See United States v. Radseck,* 7 Cir.1983, 718 F.2d 233, *cert. denied,* 1984, —— U.S. ——, 104 S.Ct. 1291, 79 L.Ed.2d 693. Finally, although we reverse because of the admission of Sanburg's deposition and because of a violation of the speedy trial act, we reject defendants' argument that the totality of the circumstances also requires reversal.

### III. CONCLUSION

The Sanburg deposition was the heart of the prosecution's case against the co-defendants. At the time of the deposition,

however, no criminal charges were pending against Feldman and Martenson, they had no reason to suspect that they should cross-examine Sanburg, and there was no party at the deposition who could be deemed a predecessor in interest to Feldman or Martenson. The trial court therefore erred in admitting the deposition under Fed.R.Evid. 804(b)(1). The admission of the deposition also violated the Confrontation Clause because the deposition did not bear sufficient indicia of reliability as articulated in *Ohio v. Roberts*, 1980, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 607–08, and in *United States ex rel. Haywood v. Wolff*, 7 Cir.1981, 658 F.2d 455, 463, *cert. denied*, 1981, 454 U.S. 1088, 102 S.Ct. 649, 70 L.Ed.2d 625. We therefore reverse the convictions of the defendants. We also find reversible error in the violation of 18 U.S.C. § 3161(c)(2) (1982) because the RICO count in the new indictment pushed the indictment beyond the "same offense" contemplated in *id*, § 3161(h)(6). We reject the co-defendants' remaining arguments on appeal. The convictions of the co-defendants are therefore REVERSED and the cause REMANDED for a new trial consistent with this opinion.