**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Raymond M. McDONALD, Defendant–Appellant.**

No. 87–2495.

United States Court of Appeals, Fifth Circuit.

Feb. 10, 1988.

Rehearing Denied March 10, 1988.

Ray Bass, Austin, Tex., for defendant-appellant.

Evan Spangler, James R. Gough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before BROWN, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This is an appeal from a conviction on three counts of mail fraud drawn from a

scheme to defraud an insurance company. We reject several points of error including a refusal to admit into evidence a deposition taken in a related civil case and affirm.

## I

Defendant Raymond McDonald and James Minteer were convicted by a jury of three counts of mail fraud in violation of 18 U.S.C. § 1341. McDonald had worked for American National Insurance Company from 1963 through 1976, and Minteer was a vice president of the company. In 1981, after McDonald lost his job with another insurance company, he asked Minteer for work. The two allegedly concocted a scheme whereby Minteer would send McDonald copies of the first pages of certain ANICO insurance applications, and McDonald would send monthly bills to ANICO, charging $18 per name, supposedly for searching the personal history of the applicants. ANICO would then send McDonald a check made payable to Insurance Communication Services, McDonald would deposit the check in his personal bank account, and would mail Minteer a kickback check.

During an internal audit, ANICO discovered the ICS billing file and began an investigation of McDonald and Minteer. The auditors approached McDonald, and he told them two stories, first that he was working on the personal history of San Antonio area applications, and second, that he was performing a socio-economic survey. ANICO filed a civil suit against McDonald and Minteer, alleging fraud, and, while the civil suit was pending, the indictment in this case was returned.

McDonald, represented by retained counsel, was arraigned and pled not guilty to each count of the indictment. He was released on a personal recognizance bond. Neither McDonald nor his attorney appeared at either of two pretrial conferences. Then, on the day of trial, McDonald moved for a continuance and a severance.

Both motions were denied, and after a five day trial, the jury found both defendants guilty on all three counts. McDonald was sentenced to 15 months in prison on one count and 5 years probation on the other counts, the period of probation to commence on his date of release from confinement. McDonald also was ordered to pay $22,436 restitution to ANICO. His motion for new trial was denied.

On appeal, McDonald raises five issues: whether the district court abused its discretion in (1) denying the motion for continuance, (2) denying the motion for severance, (3) refusing to admit into evidence deposition testimony from the civil case, and whether the court erred (4) in admitting into evidence hearsay declarations of Minteer, and (5) finding the evidence sufficient to convict McDonald. For the reasons explained below, we affirm.

## II

■ McDonald argues that the court erred in denying his eleventh-hour motion for continuance and that he was prejudiced because his counsel had inadequate time to prepare. Denial of a motion for continuance will be disturbed on appeal only upon a showing of abuse of discretion.[1] In reviewing a denied continuance, we look to the "totality of the circumstances,"[2] which includes: the time available for preparation, the likelihood of prejudice, the accused's role in shortening the effective preparation time, the complexity of the case, the availability of discovery from the prosecution, the adequacy of the defense actually provided at trial, experience of the attorney with the accused, and any spillover benefits from other lawyer's representation of co-defendants.

We find no prejudice. McDonald's counsel had represented him for over four years in ANICO's civil action, and ably represented him in the criminal trial. The lawyer effectively cross-examined government wit-

---

1. *See United States v. Jimenez–Diaz,* 659 F.2d 562, 567 (5th Cir. Unit B 1981), *cert. denied sub nom. Salazar v. United States,* 456 U.S. 907, 102 S.Ct. 1754, 72 L.Ed.2d 164 (1982).

2. *See United States v. Webster,* 734 F.2d 1048, 1056–57 (5th Cir.), *cert. denied sub nom., Hoskins v. United States,* 469 U.S. 1073, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984).

nesses and served as lead counsel throughout the trial. Although the government gave its "discovery packet" to McDonald just four days before trial, he had a recess to review evidence during trial and a full weekend to prepare the defense after the government rested. We are pointed to no deficits in the defense attributable to any lack of time for preparation.

Furthermore, the government argues persuasively that McDonald's motion for continuance was not timely and that he did not demonstrate with specificity the need for a continuance. A motion for continuance should be made as early and as specific as possible.[3] The court did not abuse its discretion in denying the motion for continuance.

### III

Generally, persons who are indicted together should be tried together.[4] Denial of a motion for severance is within the discretion of the court, and in order to establish an abuse of discretion, a defendant must show that he " 'received an unfair trial and suffered compelling prejudice against which the trial court was unable to afford protection.' "[5]

■ McDonald argues that had a severance been granted, Minteer would have testified for him. When a defendant requests a severance to obtain the testimony of a co-defendant, he "must show (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the codefendant will in fact testify."[6] McDonald made no such showing. He argues that the fact that Minteer gave deposition testimony in the civil suit is evidence that he would testify at McDonald's criminal trial. This, of course, ignores the fact that the civil depositions were taken before Minteer himself was indicted, and Minteer's attorney testified on the motion for severance that Minteer would testify only if he was granted immunity or if he was acquitted at his own trial. The possibility of testifying must be more than "a gleam of possibility in the defendant's eye."[7]

■ Finally, McDonald fails to show how he was prejudiced by the denial of the motion for severance. His only argument is that he was prejudiced by inconsistencies between his exculpatory statements and those made by Minteer. These inconsistencies, however, would have existed even if McDonald had been tried separately, and the court gave a proper cautionary instruction regarding them. The court did not abuse its discretion in denying the motion for severance.

### IV

McDonald claims that the court erred in excluding from evidence the deposition of Minteer taken during the civil proceeding and testimony of William Erwin, one of the ANICO auditors. Erwin's testimony would have been that he was present during the Minteer deposition, that Minteer had testified that the nine checks from McDonald to Minteer were payments on a boat slip that McDonald had contracted to buy from Minteer in 1980, and that Minteer had identified a deed and accounting of the McDonald payments related to the boat slip.

McDonald contends that this evidence of Minteer's former testimony was admissible under either 804(b)(1) or 804(b)(5) of the Federal Rules of Evidence. McDonald, however, raises the Rule 804(b)(5) argument for the first time on appeal, and an alternate theory of admissibility under 804(b)(5) is waived by failure to present the

---

**3.** *See United States v. Uptain,* 531 F.2d 1281, 1290–91 (5th Cir.1976); *see also United States v. Carroll,* 582 F.2d 942, 945 (5th Cir.1978) (holding that denial was proper where the motion showed no area that could be investigated further or in which additional time would have aided preparation).

**4.** *See United States v. Williams,* 809 F.2d 1072, 1084 (5th Cir.1987).

**5.** *Webster,* 734 F.2d at 1052 (quoting *United States v. Berkowitz,* 662 F.2d 1127, 1132 (5th Cir. Unit B 1981)).

**6.** *Williams,* 809 F.2d at 1084.

**7.** *United States v. Wilson,* 500 F.2d 715, 721 (5th Cir.1974), *cert. denied,* 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975).

theory to the district court.[8] Thus, we confine our discussion to the Rule 804(b)(1) argument.

■ Rule 804(b)(1) provides an exception to the general rule against admission of hearsay where the out of court statements were made as testimony in another judicial proceeding. The rule defines "former testimony" as:

> Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, *in a civil action* or proceeding, *a predecessor in interest,* had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.[9]

The parties disagree over the applicability of the predecessor in interest clause to the present case. The government contends that the predecessor in interest provision of Rule 804(b)(1) applies only when a deposition taken in a civil action is sought to be introduced in a subsequent civil action. McDonald, however, argues that the phrase "in a civil action" refers to the type of proceeding in which the deposition was taken rather than the type of proceeding in which the deposition is offered. He argues that ANICO is a predecessor in interest to the government because ANICO and the government had the same incentive to develop Minteer's testimony; they both wanted to prove that Minteer defrauded ANICO.

Although the government's reading of the rule is plausible, we agree with McDonald that Rule 804(b)(1) is not *per se* inapplicable to criminal cases. Neither the language nor the legislative history of Rule 804 is dispositive on the contested meaning of the predecessor in interest clause. The House Committee Report notes:

> The Committee considered that it is generally unfair to impose upon the party against whom the hearsay evidence is being offered responsibility for the manner in which the witness was previously handled by another party. The sole exception to this, in the Committee's view, is when a party's predecessor in interest in a civil action or proceeding had an opportunity and similar motive to examine the witness.[10]

This phrase "in a civil action" from the House Report suffers an ambiguity similar to the rule, and the full quote is equivocal support, at best, for the government's position that the predecessor in interest clause applies only in later civil actions. Nor does the Advisory Committee answer the question. Rather it observes that "whether the accused must himself have been a party to the earlier proceeding or whether a similarly situated person will serve the purpose"[11] is an open question.

Other scholars also are divided on the issue, although there is some common ground that the predecessor in interest clause is inapplicable when testimony is sought to be introduced against a criminal defendant.[12] "Another party, no matter how closely allied in interest or motive, will not do."[13] However, some scholars have noted that the predecessor in interest clause may be applicable in a criminal setting when it is the government against whom the testimony is offered.[14] The idea travels on the right of a criminal defendant to present evidence in his own defense. "[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanically to defeat the ends of jus-

---

8. *See Williams,* 809 F.2d at 1083; *United States v. Jackson,* 700 F.2d 181, 190 (5th Cir.), *cert. denied,* 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983).

9. Fed.R.Evid. 804(b)(1) (emphasis added).

10. Fed.R.Evid. 804, Notes of Committee on the Judiciary, House Report No. 93–650, U.S.Code Cong. & Admin.News 1974, p. 7051.

11. Fed.R.Evid. 804 Advisory Committee's note.

12. *See, e.g.,* 4 J. Weinstein and M. Berger, Weinstein's Evidence ¶ 804(b)(1)[05] (1987).

13. *Id.* at 804–97–98.

14. *See* Weinstein's Evidence, Vol. 4 ¶ 804(b)(1)[05]; McCormick Evidence (2d ed. 1978) § 256, p. 617.

tice."[15] While we have described the competing interpretations of the rule in categorical terms, we are not persuaded that we are limited to the two extremes. In short, we are not persuaded that the per se rule urged by the government is the best course. Rather, and although the government's interest may seldom be adequately represented, we are not prepared to say that it cannot be in any case.

Two circuits have addressed the issue of the admissibility in a criminal trial of depositions taken during a civil case. The Tenth Circuit has not held explicitly that the predecessor in interest clause is inapplicable to criminal proceedings, but has impliedly so held. In *United States v. Harenberg*,[16] a defendant convicted of a scheme involving bank loan kickbacks argued that the court erred in refusing to admit into evidence the depositions of codefendants taken in an unrelated civil suit by the bank. The Tenth Circuit held that Rule 804(b)(1) is inapplicable because the government had no opportunity to examine the witnesses.[17] In *United States v. Kapnison*,[18] another bank loan kickback case, the defendant argued that even though the government had not participated in the civil suit by the bank against a borrower, "in view of the identity of facts, issues, and interests in his criminal case and the civil case, the deposition had adequate indicia of reliability under *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and was admissable."[19] The Tenth Circuit dismissed the argument, holding that an unrelated civil deposition gives rise to no indicia of reliability and, because the government had no opportunity to develop the testimony, that the deposition was inadmissible.[20]

In contrast to the Tenth Circuit's focus on whether the government itself had examined the witness, the Seventh Circuit has applied a "similarity of motive" test to determine admissibility. In *United States v. Feldman*,[21] the government's charge of wire fraud relied heavily on the deposition of defendants' former business associate taken in an earlier proceeding. The Seventh Circuit held that the civil deposition was inadmissible under Rule 804(b)(1) because "no one at the [civil] deposition had the requisite stake in the proceeding that would be necessary for them to be deemed a predecessor in interest to the criminal defendants...."[22] The court listed several factors to be considered in determining whether the motive to develop the testimony in the civil proceeding was sufficiently similar to the motive that the party now would have in the criminal proceeding: "'(1) the type of proceeding in which the testimony is given, (2) trial strategy, (3) the potential penalties or financial stakes, and (4) the number of issues and parties.'"[23]

We recognize that *Feldman* departs from the view that the predecessor in interest clause is inapplicable when the former testimony is offered against the criminal defendant and we express no opinion on that issue. Rather, we borrow the *Feldman* inquiries for the situation before us—admissibility of former testimony *against* the government.

We prefer the Seventh Circuit's "similarity of motive" test as a better servant of Rule 804(b)(1), and a defendant's right to obtain evidence in his defense, than the Tenth Circuit's insistence that the government have actually examined the witness. Of course, the phrase "predecessor in interest" contemplates a situation where a litigant had not itself examined a witness. If

15. *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973).

16. 732 F.2d 1507 (10th Cir.1984).

17. *Id.* at 1516.

18. 743 F.2d 1450 (10th Cir.1984), *cert. denied*, 469 U.S. 1229, 105 S.Ct. 2017, 85 L.Ed.2d 299 (1985).

19. *Id.* at 1458.

20. *Id.* at 1459.

21. 761 F.2d 380 (7th Cir.1985).

22. *Id.* at 387.

23. *Feldman*, 761 F.2d at 385 (quoting *Zenith Corp. v. Matsushita Electric Industrial Co.*, 505 F.Supp. 1190, 1252 (E.D.Pa.1980), *aff'd in part, rev'd in part*, 723 F.2d 319 (3d Cir.1983)).

a party in a civil case and the government in a later criminal case have sufficiently similar incentives to develop the testimony, we see no reason to conclude that the rule is necessarily and always unavailable to a criminal defendant.

Here, although ANICO and the government had similar status in their respective claims, we find that the trial strategies were not sufficiently similar to admit the Minteer deposition. Minteer's deposition was taken before either McDonald or Minteer had been indicted, thus ANICO, knowing that it would have the opportunity to cross-examine Minteer at trial did not have the same incentives to then develop inaccuracies in the deposition testimony. The government had no opportunity to examine Minteer at trial, because he exercised his right not to testify. Aware of that risk, the government would, as in most cases, have had a strong incentive to develop fully the testimony at the time of the deposition. It follows that the district court did not err in refusing to admit the deposition of Minteer. Since the deposition itself was inadmissible, it follows that the court did not err in refusing to admit Erwin's testimony as to its contents.

### V

McDonald argues that the trial court erred in admitting into evidence the statements made by Minteer to the ANICO investigator. He contends that he was prejudiced by the testimony of the investigator that Minteer told him that McDonald was to have received applications from only the San Antonio area. He argues that in light of evidence that the applications sent to McDonald were from all over the United States, Minteer's statement tended to support the government's suggestion that McDonald's explanations were untrue. The court, however, instructed the jury to consider Minteer's statements only against Minteer.

### VI

Finally, McDonald argues that the evidence was insufficient to convict him. The standard of review of the sufficiency of evidence is whether a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt,[24] and we view the evidence in the light most favorable to the government.[25] McDonald claims that the government failed to prove specific intent, an essential element of the crime of mail fraud. Of course, the government must prove specific intent to defraud to establish the crime of mail fraud;[26] however, this intent can be proven by the scheme to defraud[27] and may be inferred from other facts.[28]

Here, the evidence demonstrated that McDonald submitted bills for "personal histories" when he was not performing personal history work, that McDonald was not performing a socio-economic survey, and that he received payments from ANICO purportedly as compensation for one of these two services. The direct and circumstantial evidence was sufficient to support a reasonable jury's conclusion that McDonald was guilty beyond a reasonable doubt.

We AFFIRM.

---

**24.** *See United States v. Gaspard,* 744 F.2d 438, 440 (5th Cir.1984), *cert. denied,* 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 341 (1985).

**25.** *See United States v. Davis,* 752 F.2d 963, 968 (5th Cir.1985).

**26.** *See United States v. Curry,* 681 F.2d 406, 410 (5th Cir.1982).

**27.** *See United States v. Stephens,* 779 F.2d 232, 236 (5th Cir.1985).

**28.** *See United States v. O'Keefe,* 722 F.2d 1175, 1181 (5th Cir.1983).